**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| LEWIS LAWSON, II,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,[1]<br>Commissioner of the Social Security Administration,<br><br>Defendant. | ) | Case No. 1:21-CV-83-SNLJ |

**MEMORANDUM AND ORDER**

The Commissioner of the Social Security Administration denied plaintiff Lewis Lawson's application for Disability Insurance Benefits under Title II of the Social Security Act. Plaintiff now seeks judicial review of the Administrative Law Judge's ("ALJ") decision. The case is fully briefed. As explained below, the ALJ's decision is supported by substantial evidence on the record as a whole and is affirmed.

## I. Procedural History

Plaintiff was born in 1973. Plaintiff filed an application for Disability Insurance Benefits on February 11, 2019, alleging an onset of disability of December 15, 2018. His claim was denied in May 2019, and he was denied again after reconsideration in February

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Under Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

2020. Plaintiff then requested a hearing by an ALJ. After the hearing, the ALJ issued an unfavorable decision, finding that plaintiff was not disabled. Plaintiff filed for review by the Appeals Council, and the Appeals Council denied plaintiff's request for review. Thus, the ALJ's decision is the final decision of the Commissioner. Plaintiff seeks judicial review.

**II. Disability Determination—Five Steps**

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *id.* § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A); *id.* § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a), 416.920(a). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work

activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d). "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." Soc. Sec. Ruling 85-28 (listing basic work activities). The claimant carries the burden to show that an impairment is severe. *Kirby*, 500 F.3d at 707–08.

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled—regardless of age, education, and work experience—and this ends the analysis. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be

based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history. . . ." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If the ALJ determines that the claimant retains the RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, then burden of production shifts to the Commissioner to show that the claimant maintains the RFC to perform other work that exists in significant numbers in the national economy. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Though the burden of production shifts to the commissioner, the claimant keeps the burden of persuasion to prove disability. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

## III. The ALJ's Decision

At Step One, the ALJ found that plaintiff met the insured status requirements through December 31, 2022 and that he had not engaged in substantial gainful activity since the alleged onset date of December 18, 2018. At Step Two, the ALJ found that plaintiff has ten severe impairments:

1. degenerative disc disease,
2. osteoarthritis,
3. degenerative joint disease,
4. hearing loss,
5. residuals of right cubital tunnel syndrome with status post decompression and transposition surgery,
6. thoracic T12 compression fracture,
7. chronic obstructive pulmonary disease,
8. cardiac right to left shunting,
9. major depressive disorder, and
10. post-traumatic stress disorder.

[Tr. 17]. The ALJ found that plaintiff has seven non-severe impairments:

1. inguinal hernia,
2. gastroesophageal reflux disease,
3. refractive error with presbyopia,
4. history of status post foot neuroma removal,
5. hypertension,
6. gastritis, and
7. duodenitis.

[Tr. 18]. The ALJ concluded that these non-severe impairments minimally affected plaintiff's ability to perform basic work and that they posed no long-term functional limitations. *Id.* Even so, the ALJ considered all symptoms to the extent that they could be reasonably accepted as consistent with the objective medical evidence. [Tr. 21].

At Step 3, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment that is listed in 20 C.F.R. Part

404, Subpart P, Appendix 1. At Step 4, the ALJ found that plaintiff had the following RFC:

> [Plaintiff can] perform a range of light work as defined in 20 CFR 404.1567(b)). He can lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk a total of six hours in eight, and sit a total of six hours in eight, except he can frequently push[] and pull with his arms and legs and can frequently reach, handle and finger with his dominant right arm; he cannot climb ladders, ropes, or scaffolds; he can occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl; he cannot have any exposure to whole body vibration; he can be exposed to a maximum environmental noise level of code 3 – moderate . . . he cannot have concentrated exposure to pulmonary irritants; he cannot have any direct interaction with the general public; and he can have only occasional changes in work duties.

[Tr. 20–21].

The ALJ stated that he had considered all symptoms and that plaintiff's impairments could reasonably be expected to cause his symptoms. [Tr. 21]. The ALJ determined that plaintiff's claims regarding the intensity, persistence, and limiting effects of his symptoms was not entirely corroborated by the evidence in the record. *Id.*

The ALJ found that plaintiff's RFC precluded any of plaintiff's past work. [Tr. 28]. Relying on vocational expert testimony, the ALJ concluded that plaintiff could perform alternative light work that existed in significant numbers in the national economy, such as a price marker, routing clerk, or electrical accessory assembler. [Tr. 29]. The vocational expert also testified that if plaintiff had to use a cane to walk or stand, then the job of electrical accessories assembler would remain. [Tr. 90]. Thus, the ALJ concluded that plaintiff is not disabled. *Id.* Although not mentioned in the ALJ's decision, the vocational expert also testified that plaintiff could perform a range of jobs at the sedentary level, given plaintiff's RFC. [Tr. 89–91].

## IV. Standard of Review

The Court must affirm the ALJ's decision if it is supported by substantial evidence on the whole record. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)) (alteration in original). The Court must also consider any evidence that fairly detracts from the ALJ's decision. *Id.* The Court must give the record a "searching inquiry" and balance the weight of the evidence in favor of the ALJ's decision against the weight of the evidence that detracts from the ALJ's decision. *Burress v. Apfel*, 141 F.3d 875, 878 (8th Cir. 1998). "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992); *see also Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (citing cases).

In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ: even if different conclusions could be drawn from the same evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's

decision." *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)).

## V. Discussion

Plaintiff raises three arguments for remand: (1) the ALJ failed to support the RFC with objective medical evidence, [Doc. 14, at 7–11]; (2) the ALJ mischaracterized evidence, which deprived plaintiff of an accurate RFC, [Doc. 14, at 11–13]; and (3) the ALJ failed to consider "new and material evidence" that was provided after the hearing but before the ALJ issued a decision. [Doc. 14, at 13–15].

### A. The ALJ's Use of Medical Evidence

Plaintiff claims that the ALJ's RFC "lacks medical evidence that addresses Lawson's ability to function in the workplace." [Doc. 14, at 9]. Plaintiff contends that the ALJ "played doctor" by improperly giving his own lay interpretation of the medical evidence. [Doc. 14, at 10] (citing *Pates-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009)). Finally, plaintiff suggests that the ALJ improperly based the RFC on the opinion of the state agency consultants, which were also based on "limited access to medical evidence." [Doc. 14, at 11]. If plaintiff's arguments are correct, then this case requires remand to further develop the record.

Under the amended Social Security regulations, for claims filed on or after March 27, 2017, the Agency will not give any specific evidentiary weight to any medical opinion. 20 C.F.R. § 404.1520c. Even so, the ALJ is still required to support his conclusions with medical evidence in the record. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)) ("[T]he ALJ should obtain

medical evidence that addresses the claimant's 'ability to function in the workplace.'"). The Commissioner makes the final RFC determination based on all the relevant evidence, including medical records, observations of physicians, and the plaintiff's own description of the severity of symptoms. *Lawrence v. Saul*, 970 F.3d 989, 995 (8th Cir. 2020) (citing cases). "Similarly, the underlying determination as to the severity of impairments is not based exclusively on medical evidence or subjective complaints," but is based on categories of evidence and regulatory factors that help to evaluate the intensity, persistence, and limiting effects of symptoms and whether the plaintiff's subjective complaints are consistent with medical evidence. *Id.* (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). Under the new regulations, the "supportability" and "consistency" of the evidence are the two more important factors in evaluating the medical opinions in the record. 20 C.F.R. § 404.1520c(b)(2); *see also Id.* § 404.1520c(c) (enumerating other factors).

Plaintiff fails to explain how the ALJ's review and incorporation of the medical records counts as a lack of medical evidence supporting the RFC. The ALJ's thorough review of thousands of pages of medical evidence undermines plaintiff's argument. [Tr. 23–29]. The ALJ reviewed plaintiff's records and noted no evidence of significant cord impingement or spinal stenosis. *E.g.*, [Tr. 25–26, 715, 856–57, 881, 893–96, 1056, 1057–59, 1144, 1262, 1265]. The ALJ noted medical examinations where plaintiff's conditions were "normal," "mild," or "unremarkable." *See, e.g.*, [Tr. 521–522, 715, 778–79, 866–67, 880–81, 895]. Elsewhere, the ALJ noted examinations that showed an independent gait, full muscle strength, and a lack of neurological deficits or inflammatory signs. *E.g.* [Tr.

26, 714–15, 753–54, 866–67, 871–72, 881, 921, 1043–44, 1062–63, 1089–91, 1095–96, 1121, 1227–28, 1290–91. 1299–1300, 1311–12]. Furthermore, the ALJ noted several instances when plaintiff showed an antalgic gait after some acute injury, but that plaintiff's gait would return to normal. [Tr. 24, 872, 880, 1121]. Nowhere in his opinion does the ALJ "play doctor" or to provide his own medical evaluation. Instead, his review is based on and supported by the medical records at hand. In all, the ALJ provided substantial evidence for finding that plaintiff could perform a range of light work.

Plaintiff may assert that the medical evidence should have supported a more limited RFC, yet the ALJ is allowed place different emphasis on the same medical evidence. *See Lawrence*, 970 F.3d at 996 (discussing the plaintiff's and the ALJ's differing interpretations of the same medical evidence and finding that the ALJ can place "different but permissible weight on these matters"). For example, plaintiff argues that an April 2020 CT scan of plaintiff's thoracic spine showed that Lawson had lost approximately 50% of vertebral body height compared to only a 25% loss indicated in an MRI from June 2019. [Doc. 14, at 10] (citing Tr. 1143–44). But the ALJ weighed this evidence differently, finding that the CT scan showed that plaintiff's T12 was healing and stable. [Tr. 26] (citing Tr. 1143–44). This highlights two varying interpretations of the same evidence. Yet, even if the record could have supported a different outcome, this Court must affirm the ALJ's decision if it was supported by substantial evidence. *Lawrence*, 970 F.3d at 996.

The ALJ was also allowed to rely on the opinion evidence of the state agency physicians, C. Ballard, M.D. and J. Bland, M.D. [Tr. 116–48]. Indeed, regulations require the ALJ to consider such opinion evidence because such consultants "are highly qualified

and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1). Both doctors found plaintiff capable of performing light work with some environmental and communicative limitations. [Tr. 122–29, 141–47]. An ALJ is allowed to rely on the opinions of examining consultants when those consultants base their opinions on objective medical evidence. *See Morton v. Saul*, No. 2:19-CV-92 RLW, 2021 WL 307552, at *8 (E.D. Mo. Jan. 29, 2021) (describing ALJ's reliance on consulting physicians as within "the zone of choice"); *Lauer*, 245 F.3d 700.

Plaintiff's reliance on *Lauer* is misplaced when he argues that the ALJ cannot rely on the opinions of consulting physicians. In *Lauer*, the court criticized an ALJ who based the RFC on a lack of medical evidence and the opinions of consulting physicians who *themselves* lacked a complete medical record history. *Lauer*, 245 F.3d at 705 (deciding, under old SSA old regulations, the weight to give to the varying opinions between medical consultants and treating physicians). Here, plaintiff fails to explain how or why the medical consultants' decisions were unsupported by evidence. Plaintiff does not explain how the medical consultants' based their decisions on "limited evidence." The medical consultants based their opinion on plaintiff's extensive medical history. Instead, plaintiff reasons that other medical evidence should have resulted in different findings. [Doc. 14, at 10] (citing [Tr. 1262, 1143–44]). But this is an argument that the ALJ and the consultants should have placed greater emphasis on some of the medical evidence; it is not an argument that shows there was a lack of medical evidence supporting the ultimate decision.

The ALJ determined that the consultants' opinions were consistent with the medical evidence presented at the time of their examinations, [Tr. 27] even if later introduced

evidence required adjusting their initial findings. Plaintiff argues that later medical records contradict the consultants' opinions, [Doc. 14, at 10] (citing [Tr. 1262]), but the ALJ even accounted for this and other records, stating that they "show some mild abnormalities and a basis for some pain and limitation, but not to the degree alleged." [Tr. 26] (explaining how July 2020 scans showed "no evidence of impingement"). The ALJ even incorporated additional limitations in the RFC beyond those recommended by the consultants because of this new information. [Tr. 27]. Plaintiff makes conclusory statements that the consultants had only "limited access to medical evidence," [Doc. 14, at 11], but does not identify what evidence was lacking in their evaluations of plaintiff. Such conclusory claims are not enough to establish that evidence was lacking. Therefore, the ALJ's decision was supported by substantial medical evidence.

Beyond the medical evidence, the ALJ's decision was also supported by other evidence, including plaintiff's daily activities and past work. The ALJ noted plaintiff's claim that he tries to "hunt and finish any chance I can." [Tr. 27, 294]. The ALJ thought that plaintiff's description of some of his daily activities were inconsistent with his reported symptoms: he concluded that plaintiff could "live and function independently, provide care for his own personal needs, prepare simple meals, hunt, fish, handle money, shop, and drive," despite plaintiff's own reported difficulties with these activities. [Tr. 26–27, 290–97]. This determination is bolstered by the fact that in June 2019 plaintiff reported that he had "been looking at working for Air-Evac" to get more money and alleviate financial stress, [Tr. 27, 933], while also reporting that he and his wife were going to travel to a beach in Texas [Tr. 27, 933]. Such statements are consistent with a person who is ready

and willing to work. Indeed, plaintiff made these reports *after* plaintiff's reported onset date and are inconsistent with plaintiff's other reported limitations. *Compare* [Tr. 933] with [Tr. 290–97] (describing purported limitations and disability). Thus, the ALJ had other evidence, supported by the medical evidence, to determine that plaintiff's symptoms were not as severe as he claimed.

Finally, the Court must note that plaintiff makes two competing claims. Plaintiff argues that, on the one hand, the ALJ did not include any objective medical evidence in crafting the RFC, *see* [Doc. 22, at 4], and on the other hand, the ALJ mischaracterized objective medical evidence in crafting the RFC. [Doc. 22, at 6]. The first argument suggests that there was no medical evidence on which to base a decision; the second argument suggests that there was medical evidence but that the ALJ interpreted it wrong. Plaintiff suggests that neither the ALJ nor the consulting examiners relied on any of the thousands of pages of medical records available and that medical evidence was completely lacking from the ALJ's decision. This is plainly not so. Plaintiff recognizes that the ALJ used the available evidence when he argues that "the available evidence supported a finding that Lawson was more impaired than as determined by the ALJ." [Doc. 14, at 12]. Therefore, plaintiff implicitly recognizes that the ALJ decision was supported by at least some medical evidence. Contrary to plaintiff's sweeping claims, the ALJ's decision relied on medical evidence.

**B. The ALJ's Characterization of the Evidence**

Plaintiff next argues that the ALJ mischaracterized the evidence and that the available evidence supports a finding of disability. [Doc. 14, at 12]. Plaintiff rehashes

some the same accusations as above—that the medical evidence supported an outcome in the other direction. As such, most of those arguments are resolved for the same reasons as above.

Concerning a July 2020 cervical spine MRI, [Tr. 1262], plaintiff argues that the MRI shows degenerative changes that are consistent with plaintiff's own testimony. Though the ALJ recognized some degenerative changes [Tr. 26], the ALJ also noted there was no evidence of spinal cord impingement [Tr. 25–26, 1262]. Plaintiff's T12 compression fractures was described as "mild" in multiple scans [Tr. 715, 857, 864, 1143], so the ALJ cannot be faulted for treating that condition as "mild." Plaintiff also disagrees with the ALJ's characterization of plaintiff's vertebral height as generally maintained. The ALJ addressed the T12 issues [Tr. 23–25], and diagnostic scans found that vertebral body height was "generally well maintained at the remaining levels." [Tr. 1059]. Again, plaintiff points out that the ALJ could have interpreted the medical evidence differently, but this Court cannot reverse on potential different conclusions. *See Lawrence*, 970 F.3d at 996.

Plaintiff states that the ALJ mischaracterized several physical exam records. [Doc. 14, at 12] (citing [Tr. 754, 761, 858]). Some of these records mark plaintiff as having a "cautious" gait and poor balance [Tr. 761] (describing gait during mental status examination) or an unsteady gait [Tr. 858] (describing gait as unsteady due to nerve damage following surgery), while others mark it as "normal." [Tr. 754]. Meanwhile, some of these records indicate that plaintiff showed signs of alertness without distress [Tr. 753]; activities of daily living were marked as "good," [Tr. 761]; and that that there was only mild tenderness, pain, and symptoms. [Tr. 753]. All these records were incorporated into

the ALJ's assessment. In sum, while some evidence could have been used to reach a different conclusion, the ALJ supported his conclusion with substantial evidence.

Plaintiff argues that the medical evidence corroborated plaintiff's testimony on the severity of his symptoms. [Doc. 14, at 13]. The ALJ found and articulated reasons for finding plaintiff's testimony inconsistent with the medical evidence. [Tr. 26–28]. The ALJ thoroughly discussed the medical evidence in the record, and referenced plaintiff's claims of severity, including plaintiff's use of a cane. [Tr. 21– 25]. As discussed above, the ALJ noted several areas where plaintiff's impairments were described as "normal," "mild," or "unremarkable." *See, e.g.*, [Tr. 521–522, 715, 778–79, 866–67, 880–81, 895].

Ultimately, the ALJ discounted plaintiff's claims with appropriate citation and reference to evidence in the record. For example, the ALJ concluded:

> The claimant's treatment during the alleged period of disability has been conservative, consisting primarily of prescribed medications. The evidence indicates the claimant's physical impairments are treated, stable, and generally controlled with prescribed medication with no evidence of significant adverse side effects. The claimant's limited course of treatment suggests the claimant's symptoms are not as intense and limiting as alleged.

[Tr. 26]. Furthermore:

> Physical examination findings similarly failed to corroborate the claimant's subjective allegations. For example, clinicians typically documented findings within normal limits throughout the relevant period but for extremity, thoracic, and lumbar spine tenderness to palpation. Generally, however, clinicians found normal cardiovascular, lung, and abdominal physical examination findings. The claimant has an independent gait. There is no evidence of significant joint or spine abnormality or significant, persistent range of motion limitation . . . . While the claimant has acute abnormalities, the pattern of objective physical examination and diagnostic findings in the medical evidence does not support the intensity of symptoms or resultant limitations alleged by the claimant.

[Tr. 26]; *see also Swink v. Saul*, 931 F.3d 765, 770–71 (8th Cir. 2019) (stating process of allowing ALJ to discount a plaintiff's subjective complaints of pain if testimony is inconsistent with the evidence as a whole). This conclusion came after thorough discussion of the objective medical evidence and plaintiff's own testimony. [Tr. 20–25]. Even so, the ALJ thought that plaintiff's condition warranted a reduction of his RFC beyond what the state examiners thought was needed. [Tr. 27]. The ALJ making further accommodations due to new medical evidence is not the ALJ issuing his own medical opinion, as plaintiff claims, but is instead the ALJ incorporating new medical evidence into the RFC, as the ALJ is required to do.

Next, plaintiff argues that the ALJ ignored the vocational expert's testimony regarding plaintiff's lawyer's hypothetical questions at the hearing. [Doc. 14, at 15]. At the hearing, in response to plaintiff's lawyer's hypotheticals, the vocational expert said that there would be no jobs in the national economy for people with plaintiff's RFC who could not use their hands 25 percent of the time; who had to lie down three to four times per day at random for up to 30 minutes at a time; who would have to leave work early or miss work entirely one day per week; or if they had to take a 15 minute break after using their hands for 30 minutes. [Tr. 92–93]. Even though the ALJ did not specifically rebut plaintiff's proposed additions to the RFC, the ALJ supported the ultimate RFC with substantial evidence. In formulating plaintiff's RFC, the ALJ rejected plaintiff's lawyer's additions to the RFC, and thus, there was no practical need to address plaintiff's hypotheticals because they were only that: hypotheticals. *See Brachtel v. Apfel*, 132 F.3d 417, 419–420 (8th Cir. 1997) ("[A]s long as there is evidence in the record to support the ALJ's finding

that [the plaintiff's] need to lie down was not credible, evidence which is present, the vocational expert's answer to a hypothetical without the lying-down impairment constitutes substantial evidence."). Here, the ALJ had evidence to find that plaintiff's added limitations were not credible, and so did not include them in the RFC. Thus, the ALJ could rely on the vocational expert's testimony regarding available jobs in the national economy.

The ALJ's findings are not the manipulation that plaintiff claims it to be. [Doc. 22, at 6] (claiming that ALJ "manipulatively discussed" the objective medical findings). "The mere fact that some evidence may support a conclusion opposite to that reached by the Commissioner does not allow this Court to reverse the decision of the ALJ." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). Rather, the ALJ properly considered all of the evidence, weighed it, and arrived at an RFC he believed to be consistent with the evidence. *See Lawrence*, 970 F.3d at 995 (stating that RFC determinations are left to the ALJ based on weighing all the evidence). Even if this Court found some merit to the plaintiff's claims, it must affirm the ALJ's RFC finding. *See Swink*, 931 F.3d at 770.

**C. The ALJ's Consideration of New Evidence**

Finally, plaintiff argues that new evidence requires remand. Plaintiff points to a "Cane/Walker Questionnaire" completed by Nurse Practitioner Stocks. The Questionnaire is dated January 15, 2021, which means it was completed just one week before the ALJ issued his decision.[2] [Tr. 39]. The Questionnaire reiterates plaintiff's history of chronic

---

[2] Plaintiff twice alters the date of the Questionnaire. First, plaintiff erroneously claims that the Questionnaire is dated January 1, 2021. [Doc. 14, at 13] (citing [Tr. 39]) ("[T]he questionnaire was dated *three weeks* prior to the ALJ's unfavorable decision.") (emphasis added). Second, in his reply memorandum, plaintiff claims that the questionnaire was

pain and states that plaintiff needs to use a cane because of his chronic pain and numbness. [Tr. 39–40]. It also states that plaintiff reports that he can only walk 25 yards without a cane.

Reports made available to the Appeals Council, even if not available to ALJs when they make their decisions, become part of the administrative record on appeal "because the Appeals Council considered them when it decided whether to review the ALJ's decision." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007). When the Appeals Council considers new evidence but denies review, this Court must determine "whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence." *Id.* "In practice, this requires this court to decide how the ALJ would have weighed the new evidence had it existed at the initial hearing." *Bergmann v. Apfel*, 207 F.3d 1065, 1067 (8th Cir. 2000).

The Commissioner claims that NP Stocks assessment that plaintiff could only walk 25 yards is entirely based on plaintiff's own report. [Doc. 21, at 12]. Plaintiff concedes that Nurse Stocks opinion was partly based on plaintiff's own reported limitations. [Doc. 22, at 7]. Plaintiff then goes on to claim that Nurse Stocks also relied on plaintiff's medical history: a medical history that was already available and used by the ALJ in crafting plaintiff's RFC. Nurse Stock's report does not reveal that his assessment was based on any new information other than plaintiff's already-available medical history. [Tr. 39–40]. As

"rendered *five weeks* prior to the ALJ's Decision." [Doc. 22, at 7] (emphasis added). The Court is unsure where plaintiff is pulling these dates. The ALJ decision is dated January 22, 2021, [Tr. 30]. The Questionnaire is dated "1/15/2021." [Tr. 39].

discussed, the ALJ already addressed the very same medical history and plaintiff's own purported limitations and need to use a cane. [Tr. 20–27, 78, 83]; *see also McDade v. Astrue*, 720 F.3d 994, 999–1000 (8th Cir. 2013) (stating that an ALJ may discount conclusions of treating physicians if those conclusions are solely based on plaintiff's own subjective reports of symptoms). The ALJ also believed that most of plaintiff's treatment records showed a normal gait and no need for a cane. [Tr. 54, 867, 920, 1044, 1055, 1063]. The ALJ also found persuasive and relied on the consulting physicians' assessments, which likewise showed no need for a cane. [Tr. 122–24, 141–44]. Because this Questionnaire seems to be based on plaintiff's own reported limitations and already-documented history, which the ALJ already incorporated into his ultimate decision, it is unlikely that this additional reiteration of plaintiff's symptoms would have changed the outcome of the case. *See Bergmann*, 207 F.3d at 1068.

Plaintiff's final argument is that the ALJ failed to properly develop the record when the ALJ did not order consultative examiners, as requested by plaintiff at a hearing. [Doc. 14, at 14] (citing [Tr. 94]). Plaintiff argued that the ALJ should have ordered new evidence in the case. His citations to *McCarthy v. Astrue* are inapposite. [Doc. 14, at 14; Doc. 22, at 2, 5] (citing No. 3:07-CV-92, 2009 WL 873708, at *8 (D.N.D. Mar. 31, 2009)). In *McCarthy*, the ALJ erred in failing to order a consultative medical examination when the ALJ "recognized the record was deficient but proceeded with his decision nevertheless." *McCarthy*, 2009 WL 873708, at *8. Thus, the ALJ's true error in *McCarthy* was failing to develop the record. That is not the case here.

As discussed, the ALJ adequately developed the record. At the hearing, plaintiff's counsel suggested that extra examinations "would be helpful" to developing the case. [Tr. 94]. Even if additional medical examinations would have been helpful, there is no added duty for the ALJ to further develop an already-developed record. *See Hilliard v. Saul*, 964 F.3d 759, 762–63 (8th Cir. 2020); *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994) ("[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision."). It was not the ALJ, but the plaintiff who had the burden of providing medical evidence as to the existence of a disability. *See Kamann*, 721 F.3d at 950 (finding that ALJ did not err when he did not order additional medical testing). The ALJ worked with a complete record and supported his findings with substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is AFFIRMED and plaintiff's complaint [Doc. 1] is DISMISSED with prejudice. A separate judgment will accompany this Order.

Dated this 14th day of September, 2022.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE